**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Shahab NAZIFPOUR, Defendant–Appellant.**

**No. 90–30399.**

United States Court of Appeals, Ninth Circuit.

Submitted Aug. 23, 1991.[*]

Decided Sept. 3, 1991.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34-4 and Fed.R.App.P. 34(a).

Harvey Richman, Coeur d'Alene, Idaho, for defendant-appellant.

Joanne P. Rodriguez, Asst. U.S. Atty., Boise, Idaho, for plaintiff-appellee.

Before BROWNING, FARRIS and NORRIS, Circuit Judges.

PER CURIAM:

Shahab Nazifpour appeals his sentence imposed following a guilty plea to making a false statement in a bankruptcy case, in violation of 18 U.S.C. § 152. Nazifpour contends the district court erred by (1) counting the creditors involved in the bankruptcy as victims for purposes of calculating his offense level under the United States Sentencing Guidelines (Guidelines), (2) increasing his offense level based on a finding that the amount of loss involved in the offense of conviction exceeded $10,000, and (3) imposing an excessive amount of restitution and an improper fine payment schedule as part of his sentence. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

## I

### Number of Victims

Nazifpour failed to report the existence of two bank accounts when he prepared the documentation in support of his bankruptcy filing. He argues that the only victim of his bankruptcy fraud was the trustee of his estate, not his creditors, and that the district court should not have increased his base offense level for involvement in a scheme to defraud more than one victim. We review de novo a district court's interpretation of the Guidelines. *United States v. O'Neal*, 937 F.2d 1369, 1374 (9th Cir.1991).

In offenses involving fraud or deceit, the Guidelines provide for the addition of two points to a defendant's offense level if "the offense involved ... a scheme to defraud more than one victim." U.S.S.G. § 2F1.1(b)(2)(B). " 'Scheme to defraud

more than one victim' ... refers to a design or plan to obtain something of value from more than one person. In this context, 'victim' refers to the person or entity from which the funds are to come directly." U.S.S.G. § 2F1.1, comment. n. 3. Conduct relevant in determining the applicable Guideline range includes "all harm that resulted from the acts or omissions [for which the defendant is accountable]." U.S.S.G. § 1B1.3(a)(3).

■ Here, the district court found that Nazifpour's secured creditors as well as the bankruptcy trustee were the victims of his fraud. Clearly, the false statement Nazifpour made in relation to his bankruptcy case was intended to result in an undervaluation of the estate in bankruptcy and the availability of less money to satisfy the demands of the creditors. Thus, Nazifpour would have "obtained something of value from more than one person," that being whatever portion of the estate to which they as creditors were entitled but which was hidden by the false statement. *See* U.S.S.G. §§ 1B1.3(a)(3), 2F1.1(b)(2)(B) and 2F1.1, comment. n. 3.[1]

## II

### Amount of Loss

Nazifpour also contends the district court erred by increasing his Guidelines offense level pursuant to U.S.S.G. § 2F1.1(b)(1)(D) based on its finding that the amount of loss exceeded $10,000.[2] Nazifpour argues this result was reached by improperly including in the offense calculation a First Interstate Bank account in existence on November 6, 1987 when he prepared his Schedules of Assets and Liabilities but liquidated on November 19,

1987, one day prior to the date of the bankruptcy filing. We review for clear error the district court's findings of fact underlying a sentencing determination. *United States v. Davis*, 922 F.2d 1385, 1388 (9th Cir.1991).

■ Nazifpour pleaded guilty to undervaluing his assets by making false statements on November 6, 1987 in relation to his bankruptcy case. One of the assets he failed to report in his Schedules of Assets and Liabilities was a First Interstate Bank account containing approximately $10,400. That he closed the account prior to filing his bankruptcy petition on November 20, 1987 does not change the fact that he did not report its existence when he prepared the Schedules of Assets and Liabilities under penalty of perjury on November 6, 1987. Therefore, the district court did not clearly err by determining that the instant offense involved loss in excess of $10,000 and adjusting the offense level accordingly. *See Davis*, 922 F.2d at 1393.

## III

### Restitution

■ Finally, Nazifpour contends the amount of restitution ordered by the district court is excessive since the First Interstate Bank account should not have been included in calculating his offense level. Because we find the district court properly included the money in this account in its offense level calculation, we need not address this part of Nazifpour's argument.

■ Alternatively, Nazifpour argues that if we find the restitution amount proper, the restitution and fine payment sched-

---

**1.** Nazifpour's argument that "there was no 'bankruptcy case' ... on November 6, 1987, the date of the 'offense conduct' alleged in the Indictment," and thus there could not be any harm to the creditors caused by the false statement on that date is specious. The count to which he pleaded guilty stated that he "knowingly and fraudulently made a false declaration under penalty of perjury in relation to his bankruptcy case, in that he stated in his Schedules of Assets and Liabilities that: he had only $620.00 worth of personal property, when, as he then well knew, that was not true." Therefore, to

argue that there was no bankruptcy case at the time he made his false statement does not deny that he made false statements "under threat of perjury" and that these statements had adverse effects on the valuation of his estate.

**2.** The Guidelines provide for a three level upward adjustment of a defendant's base offense level for fraud and deceit when the scheme involved a loss greater than $10,000. U.S.S.G. § 2F1.1(b)(1)(D).

ule is beyond his ability to pay.[3] In addition to restitution, the district court ordered Nazifpour to pay a fine sufficient to cover the cost of his electronic home detention sentence and community supervision. Nazifpour argues that the personal balance statement he filed with the court shows expenses in excess of income and that he cannot pay the fines as imposed. We review for clear error the district court's factual determination that the defendant can afford to pay the fine imposed. *United States v. Quan–Guerra*, 929 F.2d 1425, 1426 (9th Cir.1991). The defendant has the burden of proof to show that he cannot pay the fine imposed. *See id.* at 1427.

■ The district court noted at the time of sentencing that it had not imposed a greater fine than it did because it found that Nazifpour could not afford to pay more. The district court clarified its reasoning in its October 10, 1990 Order Denying Motion for Stay of Execution of Fine, stating that it had imposed the fine and payment schedule it did because it found that Nazifpour had chosen to live a more extravagant lifestyle than his means made practical and that the schedule could be met if Nazifpour lived within his means. Among other factors, the district court noted that Nazifpour earned $31,000.00 per year, that many of his debts were owed to relatives and could be paid off at any time, that he was paying off a new BMW automobile, and that he was allowing a friend to live rent-free in his apartment. Each of these facts was noted in the presentence report and formed a logical basis for the district court's finding that Nazifpour could not pay a greater fine than the one imposed. In light of these findings, we cannot say the district court clearly erred by determining that Nazifpour could afford to meet the payment schedule set out in the

Judgment Order. See *id.,* 929 F.2d at 1427.

AFFIRMED.

---

**3.** The district court ordered restitution in the amount of $10,424.00 to be paid at the rate of $174.00 per month. In addition, the court imposed a fine in the amount of $9,000.00 to be paid at the rate of $630.00 per month during the period of home detention and $95.00 per month thereafter. Nazifpour claimed $1,600.00 in income per month and expenses totalling $2,125.00 per month, resulting in a reported negative net monthly cash flow of $525.00.

\* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34-4 and Fed.R.App.P. 34(a).