UNITED STATES of America,
Plaintiff–Appellee,

v.

Charles R. MICHALEK, Defendant–
Appellant.

No. 94–1450.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 22, 1994.

Decided April 26, 1995.

Rehearing and Suggestion for Rehearing
En Banc Denied May 31, 1995.*

* The Honorable Warren J. Ferguson voted to grant rehearing.

Kaarina Salovaara (argued), Office of U.S. Atty., Crim. Div., Barry Rand Elden, Asst. U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

Patrick J. Calihan (argued), Chicago, IL, for defendant-appellant.

Before FERGUSON,** RIPPLE and ROVNER, Circuit Judges.

RIPPLE, Circuit Judge.

Charles Michalek pled guilty to one count of bankruptcy fraud, 18 U.S.C. § 152, and three counts of income tax fraud, 26 U.S.C. § 7206(1). He now appeals four two-point sentencing enhancements ordered by the district court. For the reasons set forth in the following opinion, we affirm.

## I

### BACKGROUND

A. *Facts*

Charles Michalek owned and operated a video store. During the early 1980s, the

** The Honorable Warren J. Ferguson of the United States Court of Appeals for the Ninth Circuit is sitting by designation.

business was profitable. However, by 1986, the video store was losing money. That year, Mr. Michalek filed separate bankruptcy petitions to protect both his troubled business and his personal assets. The Bankruptcy Code obligated him to report all of his assets to the bankruptcy trustee. 11 U.S.C. § 521(4); *see also* Bankr.Rule 4002, and Forms 1; 6, sched. B; and 10. However, Mr. Michalek did not comply with this requirement; he failed to disclose his ownership of artwork and other property. During the bankruptcy period, Mr. Michalek sold approximately $72,000 of this artwork. At Mr. Michalek's request, one purchaser paid $22,000 in cash. The other purchasers provided personal checks made payable to Barbara Kadlec, who, at the time, was Mr. Michalek's wife. Ms. Kadlec deposited two such checks into the couple's personal accounts and two others into the video store's accounts. Mr. Michalek did not disclose his receipt of these proceeds either to the bankruptcy court or to the trustee. He also failed to report a $23,850 capital gain he realized in 1990 on the sale of a portion of this artwork.

In addition, Mr. Michalek lied to the bankruptcy trustee about one of his disclosed assets, a Tiffany-style lamp. This lamp was among the contents of the Michalek home. The bankruptcy trustee sold the house and its contents in July 1989. However, Mr. Michalek removed the lamp prior to closing, pursuant to an arrangement with the new owners. The trustee sought the bankruptcy court's approval of this compromise. In doing so, the trustee relied upon two false documents that Mr. Michalek had given him. The first was a statement that Barbara Kadlec had drafted at Mr. Michalek's request. In that statement, Ms. Kadlec falsely claimed that the lamp had been in her family for generations. The second statement was a fake appraisal of the lamp. The appraisal appeared on an appraisal company's stationery, but had been signed by one of Mr. Michalek's former employees at Mr. Michalek's request. The appraisal incorrectly valued the lamp at less than $500.

During the bankruptcy period, Mr. Michalek also instructed Ms. Kadlec to use money from the video store operation to pay the couple's personal bills. Thereafter, Ms. Kadlec regularly deposited portions of the video store's daily cash receipts into the Michaleks' personal accounts. At times, Mr. Michalek ordered additional transfers when he believed the video store's books indicated that the business possessed too much money. When Ms. Kadlec questioned these bookkeeping practices, Mr. Michalek told her that they were permissible. Mr. Michalek failed to report any of the income he earned through these transfers on his 1988, 1989, and 1990 federal income tax returns.

In April 1991, the government learned that Mr. Michalek was selling the artwork that he had concealed from the bankruptcy trustee. Government agents obtained a warrant to search Mr. Michalek's residence. They discovered an additional $57,000 in artwork and furniture. Mr. Michalek owned all of this property. Shortly after the search, however, Mr. Michalek called Lester Kadlec, his wife's father, and asked him to claim falsely that he owned some of Michalek's art. Mr. Kadlec initially agreed, but eventually told federal agents the truth. Following these events, the government charged Mr. Michalek with one count of bankruptcy fraud, 18 U.S.C. § 152,[1] for concealing assets from the trustee and creditors in a bankruptcy proceeding, and with three counts of income tax fraud, 26 U.S.C. § 7206(1),[2] for failing to report income in 1988, 1989, and 1990.

---

1. Section 152 provides, in pertinent part, that an individual who:

> knowingly and fraudulently conceals from a custodian, trustee, marshal, or other officer of the court charged with the control or custody of property, or from creditors in any case under title 11, any property belonging to the estate of a debtor ... [s]hall be fined not more than $5,000 or imprisoned not more than five years, or both.

18 U.S.C. § 152.

2. The statute provides, in relevant part, that any person who:

> [w]illfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter
> ... shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corpora-

B. *Earlier Proceedings*

Mr. Michalek pled guilty to all counts, and the district court proceeded to sentence him pursuant to U.S.S.G. § 2F1.1. This broad guideline assigns a base offense level of six to a wide variety of crimes involving fraud, deceit, forgery, and counterfeiting. The court enhanced Mr. Michalek's sentence seven levels to reflect the amount of loss involved in his fraudulent scheme. *See* U.S.S.G. § 2F1.1(b)(1)(H) (providing for seven-level enhancement when the value of property unlawfully taken exceeds $120,000).[3] Next, it added the four additional enhancements at issue in this appeal.

First, the district court determined that a two-point enhancement was justified for "more than minimal planning." *See* U.S.S.G. § 2F1.1(b)(2).[4] The court found that Mr. Michalek's crime was "complex" and required "more than the typical planning that was necessary for such a crime." R. 45 at 2–3. It noted that Mr. Michalek had concealed assets, and then, to cover up the initial fraud, had concealed the sale of these assets as well as his receipt and use of the sale proceeds. The district court also found the enhancement appropriate on the alternative ground that Mr. Michalek's crime involved multiple victims. Second, the court determined that Mr. Michalek merited a two-point enhancement for violating a judicial order, injunction, decree, or process. *See* U.S.S.G. § 2F1.1(b)(3)(B).[5] The court commented that bankruptcy fraud typically involves violation of a judicial order. It also remarked that such an enhancement was "appropriate in all bankruptcy fraud cases ... because it is not a typical fraud ... it is a fraud on the judicial process that Mr. Michalek availed himself of and then defiled." R. 45 at 3. Third, the court ruled that Mr. Michalek should receive a two-point enhancement for his aggravating role in the offense. *See* U.S.S.G. § 3B1.1(c).[6] The court noted that Mr. Michalek had planned and organized the operation. It further noted that he had "directed others in connection with [the fraud]" and had "even directed others to violate the law." R. 45 at 4. Finally, the court found that Mr. Michalek merited a two-point enhancement for obstruction of justice. *See* U.S.S.G. § 3C1.1.[7] The court commented that Mr. Michalek had made false statements to F.B.I. agents. Additionally, it emphasized that Mr. Michalek had suborned perjury by asking Mr. Kadlec to claim falsely that he owned some of Mr. Michalek's art.

The court then reduced Mr. Michalek's total offense level by three levels to reflect his acceptance of responsibility. *See* U.S.S.G. §§ 3E1.1(a), (b).[8] Mr. Michalek's

tion), or imprisoned not more than 3 years, or both, together with the costs of prosecution. 26 U.S.C. § 7206.

3. Mr. Michalek stipulated that the total value of the artwork he sold and the income he did not declare was $94,734. As noted in the text, government agents seized an additional $57,000 in property from his home in April 1991. Thus, the total loss involved was $151,734, an amount Mr. Michalek does not dispute.

4. Section 2F1.1(b)(2) provides that:

If the offense involved (A) more than minimal planning, or (B) a scheme to defraud more than one victim, increase by 2 levels.
U.S.S.G. § 2F1.1(b)(2).

5. The applicable provision states:

If the offense involved (A) a misrepresentation that the defendant was acting on behalf of a charitable, educational, religious or political organization, or a government agency, or (B) violation of any judicial or administrative order, injunction, decree, or process not addressed elsewhere in the guidelines, increase by 2 levels. If the resulting offense level is less than level 10, increase to level 10.
U.S.S.G. § 2F1.1(b)(3).

6. Section 3B1.1(c) provides:

If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b) [which apply to activities that involve five or more participants or are otherwise extensive], increase by 2 levels.
U.S.S.G. § 3B1.1(c).

7. This guideline provides:

If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.
U.S.S.G. § 3C1.1.

8. These provisions state:

(a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

total offense level of 18 and criminal history category of I generated a guideline range of 27 to 33 months. The district court sentenced him to 30–month concurrent sentences on each of the four counts, to be followed by three years of supervised release. It also ordered him to make restitution in the amount of $94,000 to his bankruptcy creditors.

## II

## DISCUSSION

A. *Enhancement Under U.S.S.G.* *§ 2F1.1(b)(2)*

■ Mr. Michalek argues that the district court erred in enhancing his sentence for more than minimal planning because he did not engage in more planning than is typical for the commission of this crime. Similarly, he contends that the "multiple victim" enhancement was inappropriate because bankruptcy fraud typically involves multiple victims. Therefore, he concludes, this aspect of the offense already must be accounted for in § 2F1.1's base offense level. The government responds that the enhancement was appropriate in light of Mr. Michalek's complex scheme which defrauded multiple victims.

### 1.

■ We review a district court's enhancement for more than minimal planning only for clear error. *United States v. Mau,* 45 F.3d 212, 214 (7th Cir.1995); *United States v. Harrison,* 42 F.3d 427, 430 (7th Cir.1994). Guideline § 2F1.1(b)(2)(A) authorizes a two-level enhancement if the defendant's fraud involved "more than minimal planning." The Sentencing Commission noted that more than minimal planning may exist: (1) when there has been more planning "than is typical for commission of the offense in a simple form"; (2) when "significant affirmative steps were taken to conceal the offense, other than conduct to which § 3C1.1 ... applies"; or (3) when there have been "repeated acts over a period of time, unless it is clear that each instance was purely opportune." U.S.S.G. § 1B1.1, comment. (n. 1(f)); *see also* U.S.S.G. § 2F1.1, comment. (n. 2) (referencing the definition). The transcript of the sentencing hearing indicates that the district court focused upon the first factor to justify the enhancement. It also commented on Mr. Michalek's steps to conceal the crime. The court described the fraudulent scheme as "complex" and specifically noted that Mr. Michalek's concealment of artwork, sales of artwork, and receipt and use of the sales proceeds involved "more than the typical planning that was necessary for such a crime." R. 45 at 2–3.

After reviewing the record, we cannot say that the district court's finding is clearly erroneous. Mr. Michalek engaged in a protracted course of conduct which served to conceal assets from both the bankruptcy trustee and his creditors for over four years. *Cf. United States v. Brown,* 47 F.3d 198, 205 (7th Cir.1995) (indicating that "duration and nature" of fraudulent scheme were factors relevant to determination that it involved careful planning); *United States v. Lindholm,* 24 F.3d 1078, 1086 (9th Cir.1994) (noting, in bankruptcy fraud case, that "[t]he fact that defendant's behavior was repeated and involved an extended period of time implicates appellant's scheme as involving more than minimal planning"); *United States v. Loscalzo,* 18 F.3d 374, 388 (7th Cir.1994)

---

(b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level **16** or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps: (1) timely providing complete information to the government concerning his own involvement in the offense; or (2) timely notifying the authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently, decrease the offense level by **1** additional level. U.S.S.G. § 3E1.1.

The commentary to this guideline states that the enhancement typically will not apply in cases involving defendants who have received an enhancement for obstruction of justice, U.S.S.G. § 3C1.1. *See* U.S.S.G. § 3E1.1, comment. (n. 4). However, the government has not argued that the district court erred in reducing Mr. Michalek's offense level for acceptance of responsibility.

(indicating that duration of fraudulent scheme was relevant factor). When Mr. Michalek sold these concealed assets, he planned the transactions to avoid detection. One purchaser paid him $22,000 in cash. Others provided personal checks made out to Barbara Kadlec. These checks were then distributed across Michalek's personal and business accounts. The record also indicates that Mr. Michalek carefully monitored the cash level of the video store's account and that he siphoned proceeds whenever he felt the account balance was too high. Finally, the record establishes that Mr. Michalek engaged in detailed planning to deceive the trustee about the value of the Tiffany-style lamp. Mr. Michalek presented two false documents to the trustee, one of which was a phony appraisal written on an appraisal company's stationery. These facts support the district court's finding that Mr. Michalek's offense involved planning beyond what is typical for the commission of bankruptcy fraud, or other fraud, "in its simple form." *See United States v. Bean*, 18 F.3d 1367, 1370 (7th Cir.1994) (indicating that relevant inquiry is "the crime of which the defendant has been convicted, not ... the particular way in which he committed it"); *cf. United States v. Beard*, 913 F.2d 193, 199 (5th Cir.1990) (holding that district court did not err in finding more than minimal planning where evidence established that defendant had engaged in "systematic scheme," involving multiple banks and individuals, designed to disperse funds defendant had concealed from the bankruptcy court).

### 2.

■ Moreover, even if the district court erred in ordering the more than minimal planning enhancement under § 2F1.1(b)(2)(A), the § 2F1.1(b)(2) enhancement nevertheless was proper under § 2F1.1(b)(2)(B) because Mr. Michalek engaged in a "scheme to defraud more than one victim." The guideline commentary provides that a " '[s]cheme to defraud more than one

victim' ... refers to a design or plan to obtain something of value from more than one person. In this context, 'victim' refers to the person or entity from which the funds are to come directly." U.S.S.G. § 2F1.1, comment. (n. 3). When assessed in the context of this commentary, the record, considered as a whole, supports the district court's finding. Mr. Michalek deceived the bankruptcy trustee by failing to report his ownership of artwork and other assets. He also failed to report his subsequent sales of certain artwork, and he concealed the sales proceeds. These actions harmed not only the trustee, but also each of Mr. Michalek's creditors. Mr. Michalek's scheme

> was intended to result in an undervaluation of the estate in bankruptcy and the availability of less money to satisfy the demands of the creditors. Thus, [Michalek] would have obtained something of value from more than one person, that being whatever portion of the estate to which they as creditors were entitled but which was hidden[.]

*United States v. Nazifpour*, 944 F.2d 472, 474 (9th Cir.1991) (per curiam) (quotation omitted); *see also United States v. Walker*, 29 F.3d 908, 913 n. 3 (4th Cir.1994) (noting, in bankruptcy fraud case, that defendant's challenge to multiple victim enhancement was "patently without merit"). Thus, the district court did not err in ordering Mr. Michalek's sentence enhancement on this alternate basis.[9]

### B. *Violation of Judicial Process*

■ Next, Mr. Michalek argues that the district court erred in ordering the two-level enhancement for violation of a judicial process. He claims that the district court's reasoning would apply to all cases of bankruptcy fraud. This result, Mr. Michalek submits, is inconsistent with the Guidelines' focus on offender conduct. In response, the government contends that Mr. Michalek's position is contrary to the existing case law. To resolve this issue, we must determine whether the

---

**9.** Although this enhancement would seem available in almost all cases of bankruptcy fraud, we note that it is a specific offense characteristic that the Sentencing Commission seems to have included in § 2F1.1 to distinguish crimes like

bankruptcy fraud, which may involve widespread harm to multiple victims, from the many other crimes of fraud or deceit that correspond to the same guideline.

term "judicial process," as used in U.S.S.G. § 2F1.1(b)(3)(B), includes bankruptcy proceedings. We review the district court's analysis of this question of guideline interpretation de novo. *See United States v. Tai,* 41 F.3d 1170, 1174 (7th Cir.1994); *see also United States v. Mumford,* 25 F.3d 461, 465 (7th Cir.1994).

The two circuits that have confronted this issue have held that § 2F1.1(b)(3)(B) applies to violations of 18 U.S.C. § 152 when debtors have concealed assets after filing for bankruptcy. *See United States v. Bellew,* 35 F.3d 518, 520 (11th Cir.1994) (per curiam); *United States v. Lloyd,* 947 F.2d 339, 340 (8th Cir. 1991) (per curiam). We believe that these decisions accurately reflect the intent of the Congress and the Sentencing Commission. Accordingly, we join those circuits in holding that the enhancement is appropriate in circumstances such as those that confront us in this case.

■■■ At the threshold of our analysis, it is useful to note that the applicable guideline, § 2F1.1, is a dragnet guideline that sweeps within its ambit a great number of offenses involving dishonesty found in the federal criminal code and elsewhere in federal statutes. It covers many offenses that impact our society in a variety of ways.[10] Consequently, the guideline is structured to require the district court to tailor the imposed sentence to the actual crime committed by the particular defendant before the court. The district court must make the punishment fit the crime or, to be more precise, to reflect accurately the intent of the Congress with respect to the seriousness of each of the many proscribed acts. The base offense level of this guideline, standing alone, is not reflective of any of the offenses to which it

must be applied. The district court necessarily must take into account the specific offense characteristics applicable to the defendant's conduct. These specific offense characteristics expand drastically the permissible punishment depending on the amount of the monetary loss. Additional increases in punishment are mandated if the offense involved more than minimal planning, involved multiple victims, or if the defendant, in the course of the fraud or deceit, held himself out as the representative of a charitable, educational, religious, or governmental entity. Increasing the risk of serious bodily harm or of harm to a financial institution will also increase the permissible punishment, as will the concealment of the fraud through the use of foreign banks. Finally, additional punishment is permitted when the defendant violates "any judicial or administrative order, injunction, decree, or process." *See* U.S.S.G. § 2F1.1(b)(3)(B).

The offense committed by Mr. Michalek, bankruptcy fraud in violation of 18 U.S.C. § 152, is among the crimes that the Commission has mandated be controlled by this guideline. As noted above, § 2F1.1(b)(3)(B) authorizes courts to enhance the base offense level of a defendant's sentence if the crime involved "violation of any judicial or administrative order, injunction, decree, or process not addressed elsewhere in the guidelines." The imposition of the § 2F1.1(b)(3)(B) enhancement is hardly impermissible double counting. Section 2F1.1 is a very broad guideline that covers a variety of crimes involving fraud, deceit, forgery, and certain types of counterfeiting. It necessarily must be adjusted through the use of the specific offense characteristics. The fact that this enhancement might apply in a great number of cases [11] where a debtor conceals assets

---

10. *"Background:* This guideline is designed to apply to a wide variety of fraud cases. The statutory maximum term of imprisonment for most such offenses is five years. The guideline does not link offense characteristics to specific code sections. Because federal fraud statutes are so broadly written, a single pattern of offense conduct usually can be prosecuted under several code sections, as a result of which the offense of conviction may be somewhat arbitrary. Furthermore, most fraud statutes cover a broad range of conduct with extreme variation in severity." U.S.S.G. § 2F1.1, comment. (backg'd.).

11. The enhancement will not be applied to all prosecutions brought pursuant to 18 U.S.C. § 152. The Sentencing Guidelines recognize that the statute's prohibitions against bribery and perjury are best addressed outside the scope of § 2F1.1. *See* U.S.S.G. App. A (noting that guidelines for bribery, § 2B4.1, and perjury, § 2J1.3, correspond to certain crimes arising under 18 U.S.C. § 152).

does not establish that § 2F1.1(b)(3)(B) is somehow flawed. Rather, it demonstrates that such violations of 18 U.S.C. § 152, in their most basic form, involve a higher level of culpability, and thus deserve greater punishment, than some of the other crimes that correspond to Guideline § 2F1.1.[12]

We cannot accept the argument that the enhancement ought not apply because the defendant did not violate an identifiable order, injunction, decree or process. Such a contention overlooks an essential difference between bankruptcy proceedings and other types of litigation. Although expressing its views in an abbreviated per curiam opinion, the Court of Appeals for the Eighth Circuit put its collective finger on this essential concept when it pointed out that the defendant had "sought protection from his creditors under the shelter of bankruptcy" and then had "abused the bankruptcy process and hindered the orderly administration of the bankruptcy estate by concealing assets." *Lloyd,* 947 F.2d at 340. A bankruptcy proceeding is not just another transitory cause of action that serves to adjudicate the rights and obligations of individuals. It is a special procedure by which the debtor seeks the protection of federal law from his creditors. In order to gain that protection, he must submit his property to the jurisdiction and active supervision of the bankruptcy court which acts through its trustee. As our colleague Judge Selya of the First Circuit has noted, the broad grant of jurisdictional authority, combined with the operation of the automatic stay provision, 11 U.S.C. § 362, provides the court and its trustee with the authority and the responsibility to administer the assets of the bankrupt estate. *See Sunshine Dev.,*

*Inc. v. FDIC,* 33 F.3d 106, 114 (1st Cir.1994); *accord Edwards v. Armstrong World Indus., Inc.,* 6 F.3d 312, 316 (5th Cir.1993) (noting that the automatic stay provisions of the Bankruptcy Code "enable bankruptcy courts to take control of all of the assets of the debtor giving the court opportunity to survey the landscape of debtor's financial condition"), *cert. granted in part,* —— U.S. ——, 114 S.Ct. 2099, 128 L.Ed.2d 661 (1994).[13]

For the Eighth Circuit in *Lloyd,* the gravamen of bankruptcy fraud was that the defendant had abused the process of the bankruptcy court. In *United States v. Linville,* 10 F.3d 630, 632–33 (9th Cir.1993), the Court of Appeals for the Ninth Circuit set forth an analysis that indicated its agreement with the approach of the Eighth Circuit. *Linville* did not involve a bankruptcy matter but rather an administrative warning issued by the Department of Agriculture. Although rejecting the imposition of the enhancement in that context, our colleagues on the Ninth Circuit contrasted the situation before them with that before the Eighth Circuit in *Lloyd.* In analyzing § 2F1.1(b)(3)(B), the Ninth Circuit noted:

> Courts interpreting this enhancement provision have upheld its application to violations of formal judicial orders which resulted from adversarial proceedings. For example, in *United States v. Lloyd,* 947 F.2d 339, 340 (8th Cir.1991), the court approved the imposition of an offense level increase under the section based on defendant's abuse of the judicial bankruptcy process by concealing assets in a Chapter 11 proceeding. The court reasoned that even though defendant had not violated a specific court

---

**12.** *Cf. United States v. Lallemand,* 989 F.2d 936, 939 (7th Cir.1993) (noting, albeit in a different context, that where a guideline covers a wide range of offenses, it may be possible, without double counting, to apply an upward adjustment to all perpetrators of a particular offense who are more culpable, and thus distinct from, others who have committed offenses corresponding to the same guideline).

**13.** The Supreme Court's grant of certiorari was limited to the question of whether Federal Rule of Civil Procedure 65.1 "allows enforcement of a supersedeas bond, posted to stay execution of judgment against a defendant that filed for reor-

ganization after the judgment became final, against the non-bankrupt surety that issued the bond, even though a bankruptcy court in another circuit has attempted to restrain execution on supersedeas bonds posted in favor of the debtor under section 105(a) of the Bankruptcy Code." *See Celotex Corp. v. Edwards,* —— U.S. ——, 114 S.Ct. 2099, 128 L.Ed.2d 661 (1994). The Court heard oral argument in that case on December 6, 1994. Another petition for certiorari arising out of the same litigation was dismissed. *See Northbrook Property & Casualty Ins. Co. v. Edwards,* —— U.S. ——, 114 S.Ct. 2120, 128 L.Ed.2d 658 (1994).

order, he had violated a specific adjudicatory process.

10 F.3d at 632. By citing the bankruptcy proceedings in *Lloyd* as an "example" of an "adversarial" proceeding, and by paraphrasing *Lloyd's* determination that such proceedings constitute "judicial process," *see* 947 F.2d at 340, the Ninth Circuit indicated its agreement with the Eighth Circuit that bankruptcy proceedings involved "the kind of formalities that undergird orders, injunctions and decrees." *Linville,* 10 F.3d at 633.

The Eighth Circuit's view that fraudulent representations to the bankruptcy court and its trustee violate the judicial "process" of the court is consistent with the realities of bankruptcy practice. Even if we were to depart from that view, however, the imposition of the enhancement would still be appropriate. The falsehoods submitted by the defendant to the court were, as the Court of Appeals for the Eleventh Circuit has pointed out in *United States v. Bellew,* 35 F.3d 518 (11th Cir.1994), in direct violation of the requirements of the rules and forms of the Bankruptcy Rules to declare truthfully all assets and liabilities. In a bankruptcy adjudication, this requirement is, as the Eleventh Circuit pointed out, "in the context of formal, adversary court proceedings." *Id.* at 521.

 In any event, we cannot overlook the fact that the defendant's conduct violated the automatic stay provision, 11 U.S.C. § 362. Although the automatic stay is imposed initially not by judicial decree but by legislative command, it would exalt form over substance to maintain that the stay is not, for purposes of this guideline, a judicial order. The stay is imposed automatically in order to give the bankruptcy court an opportunity to assess the debtor's situation and to embark on an orderly course in resolving the estate. In short, the stay is to ensure the orderly conduct of a judicial proceeding. The stay is therefore under the control of the bankruptcy court and may be lifted or modified after the court has had an opportunity to examine "the adequacy of protections for creditors' interests and other equitable considerations." *In re McGaughey,* 24 F.3d 904, 906 (7th Cir.1994); *see also In re Vitreous Steel Prods. Co.,* 911 F.2d 1223, 1231–32 (7th Cir.

1990); *In re Boomgarden,* 780 F.2d 657, 660 (7th Cir.1985). It would be difficult to find a judicial order more explicit or conduct more violative of that order.

Accordingly, we conclude that the district court committed no error when it imposed this enhancement.

### C. *Aggravating Role*

 Mr. Michalek also challenges the district court's imposition of a two-point enhancement for his aggravating role in the offense. He notes that a defendant must supervise at least one other criminally responsible person to qualify for this enhancement. He then argues that there were no other criminally responsible individuals involved in his bankruptcy fraud. He emphasizes that Ms. Kadlec did not sign his bankruptcy petitions and that, although she pled guilty to tax evasion, she did not plead guilty to bankruptcy fraud. The government characterizes the bankruptcy fraud as a continuing offense and argues that Mr. Michalek was its leader-organizer. It notes that he specifically recruited Ms. Kadlec into the scheme and that he directed Ms. Kadlec's efforts to conceal assets from the trustee.

 We review a district court's finding that a defendant played an aggravating role in the offense for clear error. *United States v. Young,* 34 F.3d 500, 507 (7th Cir. 1994). The aggravating role enhancement is outlined in U.S.S.G. § 3B1.1. In part, that provision authorizes a two-level enhancement to the base offense level of any defendant who "was an organizer, leader, manager, or supervisor in any criminal activity." U.S.S.G. § 3B1.1(c). Application note 2 of this guideline indicates that "[t]o qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants." U.S.S.G. § 3B1.1, comment. (n. 2). Another note defines "participant" as a "person who is criminally responsible for the commission of the offense, but [who] need not have been convicted." *Id.,* comment. (n. 1). Thus, the application notes make clear that Ms. Kadlec can qualify as a criminally responsible individual even though

**334**

she was not convicted of bankruptcy fraud. Moreover, the record supports a finding that Ms. Kadlec was criminally responsible for the commission of this offense. She knowingly signed a document that falsely stated to the bankruptcy trustee that the Tiffany-style lamp was a family heirloom. She knowingly accepted checks from the sale of Mr. Michalek's hidden artwork and deposited the proceeds into various bank accounts. The record also indicates that Mr. Michalek consistently directed Ms. Kadlec's activities in connection with his fraudulent scheme. Accordingly, the district court did not clearly err in ordering this enhancement.[14]

### D. *Obstruction of Justice*

█ Finally, Mr. Michalek contends that the district court erred in ordering the two-point enhancement for obstruction of justice. He argues that the false statements he made

to FBI agents did not obstruct significantly their investigation. Similarly, he claims that his attempt to suborn perjury does not warrant the enhancement because the false testimony he hoped to elicit would not have impeded the government's investigation. The government focuses exclusively on the perjury question. It notes that the commentary to guideline § 3C1.1 indicates that an obstruction enhancement is appropriate in such circumstances.

We review the district court's finding that Mr. Michalek obstructed justice for clear error. *See United States v. Harrison*, 42 F.3d 427, 430 (7th Cir.1994). We must reject Mr. Michalek's argument in light of application note 3 to guideline § 3C1.1, which provides "a non-exhaustive list of examples of the types of conduct to which [the obstruction enhancement] applies." U.S.S.G. § 3C1.1, comment. (n. 3). Among the conduct the

---

14. In his reply brief, Mr. Michalek contends that the district court's imposition of both the "more than minimal planning" and "aggravating role" enhancements constituted impermissible double counting. Mr. Michalek failed to raise this argument in his opening brief. Consequently, he has waived it. Cir.R. 18(f); *see United States v. Hughes*, 970 F.2d 227, 235 n. 6 (7th Cir.1992).

In any event, the applicable version of the Guidelines indicates that the two enhancements should be applied cumulatively. *See* U.S.S.G. § 1B1.1, comment. (n. 4) ("[T]he adjustments from § 2F1.1(b)(2) (more than minimal planning) and § 3B1.1 (aggravating role) are applied cumulatively."); *cf. United States v. Harris*, 41 F.3d 1121, 1123 (7th Cir.1994) (noting that amendment adding the application note to the 1993 guidelines does not demonstrate that previous versions of the guidelines were more lenient). Moreover, we note that the district court's alternative finding that the enhancement under guideline § 2F1.1(b)(2) was appropriate because Mr. Michalek had defrauded multiple victims also eliminated any double counting problem. *See United States v. Boula*, 932 F.2d 651, 655 (7th Cir.1991) (noting that there could be no double counting problem if the § 2F1.1(b)(2) enhancement were given for defrauding multiple victims); *accord United States v. Aideyan*, 11 F.3d 74, 76 (6th Cir.1993).

Mr. Michalek's reliance upon *United States v. Romano*, 970 F.2d 164, 167 (6th Cir.1992) is infirm for another reason. We, along with a substantial majority of the other Circuits, have rejected this position. *See United States v. Harris*, 41 F.3d 1121, 1123 (7th Cir.1994) (finding no double counting where defendant received enhancements under guideline §§ 2B1.1 and 3B1.1); *United States v. Boula*, 932 F.2d 651,

655 (7th Cir.1991) (finding no double counting problem and noting that §§ 2F1.1(b)(2) and 3B1.1 are not mutually exclusive); *United States v. Godfrey*, 25 F.3d 263, 264 (5th Cir.) (noting that Fifth Circuit does not prohibit double counting unless guidelines themselves do so and that §§ 2F1.1(b)(2) and 3B1.1 do not), *cert. denied*, —— U.S. ——, 115 S.Ct. 429, 130 L.Ed.2d 342 (1994); *United States v. Smith*, 13 F.3d 1421, 1429 (10th Cir.) (finding no double counting problem), *cert. denied*, —— U.S. ——, 115 S.Ct. 209, 130 L.Ed.2d 138 (1994); *United States v. Wong*, 3 F.3d 667, 671–72 (3d Cir.1993) (noting that there was no double counting problem involved in applying more than minimal planning enhancement available under § 2B1.1(b)(5) and aggravating role enhancement under § 3B1.1(c)); *United States v. Rappaport*, 999 F.2d 57, 60–61 (2d Cir.1993) (finding no double counting problem); *United States v. Willis*, 997 F.2d 407, 419 (8th Cir.1993) (indicating that court may order both enhancements), *cert. denied*, —— U.S. ——, 114 S.Ct. 704, 126 L.Ed.2d 670 (1994); *United States v. Kelly*, 993 F.2d 702, 705 (9th Cir.1993) (noting that more than minimal planning describes "complexity of scheme" while leadership enhancement addresses "a somewhat different concern," one's "role within the group of coconspirators"); *United States v. Balogun*, 989 F.2d 20, 23–24 (1st Cir.1993) (suggesting that double counting could exist if same conduct were used for both enhancements, but finding that district court had ordered § 3B1.1(c) enhancement because defendant had recruited others and § 2F1.1(b)(2) enhancement due to complexity of the scheme); *United States v. Curtis*, 934 F.2d 553, 556 (4th Cir.1991) (noting that the guidelines themselves do not prohibit double counting).

Sentencing Commission included in this non-exhaustive list was "committing, suborning, or attempting to suborn perjury." *Id.*, comment. (n. 3(b)). Mr. Michalek does not dispute the district court's finding that he attempted to suborn perjury from Lester Kadlec. In light of this finding and application note 3(b), the district court did not err in ordering the obstruction enhancement. *See United States v. Linnear*, 40 F.3d 215, 222 (7th Cir.1994) (affirming obstruction enhancement where defendant attempted to suborn perjury); *United States v. Hamm*, 13 F.3d 1126, 1130 (7th Cir.1994) (same).

## Conclusion

For the foregoing reasons, Mr. Michalek's sentence is affirmed.

AFFIRMED

FERGUSON, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that the district court did not err in applying three two-point sentencing enhancements for more than minimal planning, aggravating role, and obstruction of justice. In applying these three enhancements, the district court correctly considered the particular facts of the crime committed and determined that those facts warranted the enhancements. However, I disagree with the majority in its interpretation in Part IIB of the fourth sentencing enhancement for violation of a judicial order, injunction, decree, or process. *See* U.S.S.G. § 2F1.1(b)(3)(B). The majority ignore the common meaning of the word "process" as it applies to legal activities. They also violate fundamental rules which apply to the interpretation of statutes.

The defendant was convicted of bankruptcy fraud in violation of 18 U.S.C. § 152 (in addition to three counts of tax fraud about which there is no disagreement with the sentences). He was charged with making false statements to the bankruptcy trustee with regard to assets that were fraudulently concealed. The bankruptcy fraud statute provides for a sentence of not more than five years. The defendant was sentenced pursuant to United States Sentencing Guidelines § 2F1.1 and four two-point enhancements

were applied to the base offense level of six for bankruptcy fraud. One enhancement was for more than minimal planning. Another was for his leadership in the bankruptcy fraud. The third enhancement was for obstructing the administration of justice by making false statements to FBI agents and suborning perjury. Those enhancements were properly imposed, because they were factors which exceeded the core offense of bankruptcy fraud.

But then the district court imposed another two-point enhancement solely because the core offense was bankruptcy fraud. The district court stated:

> I believe it is appropriate in all bankruptcy fraud cases to have such an enhancement because it is not a typical fraud, it is not an ordinary fraud, it is not a common fraud, it is a fraud upon the judicial process.

In other words, the district court believes that the base level of six is not sufficient when the fraud is bankruptcy fraud.

The majority reasons that the district court had authority to add the two-point enhancement because U.S.S.G. § 2F1.1(b)(3)(B) permits such an enhancement when an offense of fraud or deceit involves the violation of any judicial order, injunction, decree, or process. All agree that no specific order, injunction, or decree was violated. The majority, by upholding the district court, have in effect substituted the word "system" for "process." As used in § 2F1.1 "process" is not a generic term that encompasses bankruptcy procedures in general. Rather, "process must be construed to be a directive based upon the kind of formalities that undergird orders, injunctions, and decrees." *United States v. Linville*, 10 F.3d 630, 633 (9th Cir.1993). "Process" must be interpreted to be a specific judicial mechanism such as a subpoena or summons.

It is a fundamental rule of statutory interpretation that all words in a statute must be given equal meaning and must be interpreted in light of the others. "Under accepted canons of statutory interpretation, we must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that ren-

ders other provisions of the same statute inconsistent, meaningless or superfluous." *Boise Cascade Corporation v. United States Environmental Protection Agency,* 942 F.2d 1427, 1432 (9th Cir.1991). If "process" means something other than a specific directive, then the words "order," "injunction," and "decree" in the Guidelines are superfluous. As was stated in *Linville,* 10 F.3d at 633, "the Guideline speaks of 'violations.' That is a perfectly intelligible usage as it applies to an 'order injunction [or] decree.' It is also intelligible if 'process' is considered to be of the same ilk as those." The word "process" must be interpreted in accordance with the interpretation of "order," "injunction," and "decree," which are formal and specific directives from a court. *See also United States v. Eve,* 984 F.2d 701, 703 (6th Cir.1993) (where the defendant violated a specific court order prohibiting him from operating a motor vehicle for at least 99 years). For example, in *United States v. Deutsch,* 987 F.2d 878, 885–86 (2d Cir.1993), the adjustment was permitted because of the violation of a specific court order. And in *United States v. Paccione,* 751 F.Supp. 368, 375 (S.D.N.Y.1990), *aff'd,* 949 F.2d 1183 (2d Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3029, 120 L.Ed.2d 900 (1992), the adjustment was allowed because of the violation of a specific injunction. However in this case, the majority have effectively eliminated "order," "injunction," and "decree" from the Guideline, because they are superfluous and are subsumed by the word "process."

The error of the majority is particularly clear in this case, where the defendant's only violation was the core violation—bankruptcy fraud—upon which his base offense level was calculated. The defendant did not violate a bankruptcy "process" in addition to or while committing bankruptcy fraud. He did not do any act except the commission of bankruptcy fraud to trigger application of the enhancement. The district court's use of this enhancement derogated the very structure of the Sentencing Guidelines, whereby the core crime corresponds to the base offense level and the enhancements correspond to the particular facts of the crime as it was committed by the defendant. *See United States v. Bridges,* 50 F.3d 789, 791 (10th Cir.1994).

The fact that the applicable guideline, § 2F1.1, is a "dragnet" guideline does not change this basic structure.

But we need not engage in rules of statutory construction to understand what the word "process" means. While it may have the meaning of "system" in describing business activities such as the "process" of meat packing, it has a different meaning in the law. In *Black's Law Dictionary* at 1370, the word "process" as commonly understood signifies those formal instruments called "writs which may be issued during the process of an action such as 'writ of execution.'"

Therefore, I respectfully dissent from the § 2F1.1(b)(3)(B) enhancement portion of the majority opinion.