139 F.3d 902
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
United States of America, Plaintiff-Appellee,
v.
James R. KASTER, Defendant-Appellant.
 No. 97-3210.
 United States Court of Appeals, Seventh Circuit.
 Argued Jan. 27, 1998.
Decided Feb. 19, 1998.
 
 Appeal from the United States District Court for the Eastern District of Wisconsin. No. 97-CR-43 Thomas J. Curran, Judge.
 Before Hon. JESSE E. ESCHBACH, Hon. JOHN L. COFFEY, Hon. FRANK H. EASTERBROOK, Circuit Judges.
 
 ORDER
 
 1
 James Kaster pleaded guilty to knowingly making a false declaration or statement under penalty of perjury during a bankruptcy proceeding in violation of 18 U.S.C. § 152(3). The Statutory Index to the Sentencing Guidelines allows district courts to calculate the offense level of a person violating § 152 using one of three guidelines based on the nature of the offense; U.S.S.G. §§ 2B4.1 (bribery), 2F1.1 (fraud and deceit), and 2J1.3 (perjury). The district court used § 2J1.3 to calculate Kaster's sentence, and he appeals arguing that § 2F1.1 more accurately reflects the nature of his crime. For the reasons stated herein, we affirm the district court's judgment.
 
 HISTORY
 
 2
 In 1993, Kaster filed for Chapter 7 bankruptcy. As part of the bankruptcy proceedings, Kaster submitted signed and sworn financial schedules to the bankruptcy court. On the schedules, Kaster reported his ownership of residential property worth $85,000 in Madison, Wisconsin, but stated that a lien worth $99,450 was held by "R.J. Kaster". In fact, "R.J. Kaster" was Kaster's alter-ego, created by him when he could not obtain employment due to an earlier felony conviction.[1] Therefore, the lien was illusory. Further, Kaster did not reveal to the bankruptcy court his interest in a 1978 Cessna Skyhawk aircraft or a 1985 Porsche automobile, both registered to "R. Jim Kaster". The bankruptcy court granted Kaster a discharge in late 1993, however, the case was reopened after Kaster's omissions were discovered.
 
 
 3
 In March 1997, Kaster was indicted on one count of knowingly making a false declaration or statement under penalty of perjury during a bankruptcy proceeding, in violation of 18 U.S.C. § 152(3). The district court accepted Kaster's guilty plea and ordered a presentence investigation report (PSI).
 
 
 4
 The PSI set Kaster's base offense level at 12, based on U.S.S.G. § 2J1.3(a) (perjury). It recommended enhancing the base offense level by three under § 2J1.3(b)(2), because Kaster's lies resulted in a "substantial interference with the administration of justice," and lowering the offense level by two under § 3E1.1 for acceptance of responsibility, resulting in an offense level of 13. The PSI calculated Kaster's criminal history category at III. Thus, the recommended sentencing range was 18 to 24 months' imprisonment.
 
 
 5
 Kaster objected to his sentence being calculated under the perjury guideline, arguing that § 2F1.1, the guideline for offenses involving fraud and deceit, more accurately reflected the nature of his crime.[2] Moreover, he asserted that he should not be subject to any enhancement under either guideline. The government urged the use of § 2J1.3, arguing perjury more accurately fit the crime because Kaster used his other identity not to defraud his creditors or the bankruptcy court, but instead to obtain credit and employment. Therefore, the government argued, Kaster simply lied to the bankruptcy court; conduct more aptly described as perjury.
 
 
 6
 The district court rejected Kaster's objections, and adopted the factual findings and guideline application provided by the PSI. The court found that Kaster had committed perjury and, as a result, the bankruptcy proceedings had to be reopened which constituted a substantial interference with the administration of justice. In accordance with the PSI recommendations, the court determined that Kaster's sentencing range was 18 to 24 months' imprisonment. The court imposed a term of 18 months.
 
 
 7
 Kaster appeals only the district court's choice of guideline; he does not appeal the § 2J1.3(b)(2) enhancement. He argues that the district court erred in sentencing him under § 2J1.3 rather than 2F1 .1. He also maintains that the district court double counted by considering his prior convictions in determining which guideline to apply, as well as in determining his criminal history category.
 
 ANALYSIS
 
 8
 When sentencing a defendant, the district court must determine the offense guideline section "most applicable to the offense of conviction (i.e., the offense conduct charged in the count of indictment ...)." U.S.S.G. § 1B1.2(a); see also United States v. Ellison, 113 F.3d 77, 80 (7th Cir.), cert. denied, --- U.S. ----, 118 S.Ct. 235, 139 L.Ed.2d 166 (1997); United States v. Dion, 32 F.3d 1147, 1148-49 (7th Cir.1994). The Statutory Index to the Sentencing Guidelines "specifies the guideline section or sections ordinarily applicable to the statute of conviction." U.S.S.G.App. A (Statutory Index), intro.; see United States v. Andersen, 45 F.3d 217, 219 (7th Cir.1995). The Index lists three offense guideline sections applicable to convictions under 18 U.S.C. § 152. They are §§ 2B4.1 (bribery), 2F1.1 (fraud and deceit), and 2J1.3 (perjury).[3] See United States v. Michalek, 54 F.3d 325, 331 n. 11 (7th Cir.1995). Neither party disputes the irrelevance of the bribery guideline in this case; therefore, the district court correctly limited its consideration of potential guidelines to §§ 2F1.1 and 2J1.3.
 
 
 9
 The introduction to the Index instructs: "If more than one guideline is referenced for the particular statute, use the guideline most appropriate for the nature of the offense conduct charged." See also U.S.S.G. § 1B1.2, comment. (n.1). Thus, the issue before the district court was whether Kaster's offense conduct was more akin to perjury or fraud. See United States v. Agostino, Nos. 97-2105 & 97-2340, slip op. at 18-19 (7th Cir. Dec. 22, 1997) (typeset version). The district court's decision to apply § 2J1.3 was a factual determination that Kaster's false statements to the bankruptcy court was more like perjury than fraud. That factual determination is subject to review for clear error. Id. at 19.
 
 
 10
 The district court did not commit clear error in deciding that Kaster's conduct was more akin to perjury than fraud. Kaster was charged with "knowingly and fraudulently mak[ing] a false declaration and statement, under penalty of perjury." He pleaded guilty to making false statements to the bankruptcy court under penalty of perjury. Throughout the criminal proceedings, Kaster insisted that he created the alter ego for the purpose of obtaining credit and employment, not for the purpose of going bankrupt or defrauding his creditors. He told the probation officer that the reason he did not report his interest in the house was because he wanted to pay off those creditors fully, and that he did not report his interest in the car and airplane because he did not want his creditor (i.e. his father-in-law) to learn of the alter-ego. Kaster also testified that the lien on the house, the car and the airplane were held in the name (and social security number) of his alter-ego and, when he filed the bankruptcy petition, he did not know how to handle the problem. The parties agreed that Kaster's omissions resulted in no harm to his creditors. As the government argued, Kaster's actions most harmed the integrity of the court and, therefore, more resembles perjury than fraud. Under these circumstances, the district court did not err in applying the perjury guideline to Kaster's offense.
 
 
 11
 Kaster relies primarily on the fact that there are no reported cases in which a district court used § 2J1.3 to sentence someone who has violated 18 U.S.C. § 152.[4] That no similar cases are reported[5] does not seem unusual. Fraud is defined as "[a]n intentional perversion of the truth for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him or to surrender a legal right." Blacks Law Dictionary 661 (6th ed.1991); see Dion, 32 F.3d at 1149 (relying on "our common understanding" of a crime, and Black's Law Dictionary, when neither text nor commentary of a guideline section defines the crime); see also McNally v. United States, 483 U.S. 350, 358, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987) (" '[T]o defraud' commonly refer[s] to wronging one in his property rights by dishonest methods and usually signif[ies] the deprivation of something of value by trick.") (quotation omitted); Bridges v. United States, 346 U.S. 209, 73 S.Ct. 1055, 97 L.Ed. 1557, (1953) (suggesting "fraud" implies a pecuniary motive). It is reasonable to assume that the majority of bankruptcy petitioners who do not disclose their assets simply want to maintain their interest in those assets at the expense of their creditors. See, e.g. Michalek, 54 F.3d at 327 (debtor concealed property valued at $151,734 for personal use); United States v. McClellan, 868 F.2d 210 (7th Cir.1989) (debtor transferred title to his home and two expensive sports cars, and charged a luxury vacation to Europe in anticipation of filing bankruptcy). Thus, they lie for the purpose of inducing creditors to part with some valuable thing (money) or to surrender a legal right (the legal right to some part of the bankrupt's assets), rather than for the purpose of hiding an alter-ego created because of a prior felony conviction.
 
 
 12
 Perjury, on the other hand, is defined as "[a] false statement knowingly made in a proceeding in a court." Blacks Law Dictionary 1139; see also United States v. Dunnigan, 507 U.S. 87, 94, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993) (relying on 18 U.S.C. § 1621, the federal perjury statute, to define perjury for purposes of U.S.S.G. § 3C1.1 (obstruction of justice)); 18 U.S.C. § 1621(2) (whoever knowingly signs a false statement under penalty of perjury commits perjury). Moreover, in dicta, this court has stated: "The Sentencing Guidelines recognize that [ § 152's] prohibitions against bribery and perjury are best addressed outside the scope of § 2F1.1." Michalek, 54 F.3d at 331 n. 11 (citing U.S.S.G.App. A). Here, Kaster signed a document under penalty of perjury knowing it to be false and submitted that document to the bankruptcy court in violation of § 152(3). Clearly, this subsection of § 152 prohibits perjury and, therefore, is more appropriately addressed under the perjury guideline. Further, Kaster said his motive was not pecuniary gain--a characteristic normally associated with fraud. Given these circumstances, it was not unreasonable for the district court to conclude that Kaster's conduct was more like perjury than fraud.
 
 
 13
 Finally, Kaster asserts that the district court impermissibly double counted by considering his criminal history when determining which guideline to apply. Kaster, however, does not clearly indicate the part of the district court's oral ruling to which he objects. Nowhere in the court's analysis did the district court judge make any reference to a prior conviction. The judge did refer to acts committed by Kaster which may have constituted separate crimes (e.g. making a fraudulent application for a social security number), but Kaster was never even charged for these acts and, therefore, they were not considered in calculating his criminal history category. Thus, even if the district court considered those acts in determining which guideline to apply, the court did not double count those acts in determining Kaster's sentence.
 
 
 14
 We conclude that the district court did not clearly err when it decided that Kaster's offense conduct was more like perjury than fraud. Moreover, the sentencing court did not impermissibly double count Kaster's criminal conduct in calculating his offense level and criminal history category. Therefore, we affirm the district court's judgment.
 
 
 
 [1]
 The record shows that in 1992, Kaster procured a social security number in the name of R. James Kaster. Kaster then used the social security number to obtain other identification (e.g., an Illinois driver's license and a pilot's license from the FAA)
 
 
 [2]
 The base offense level under § 2F1.1(a) is six. The government agreed to stipulate for the purposes of this litigation that Kaster's lies did not cause any loss; therefore, his offense level would not have been adjusted under § 2F1.1(b)(1). Based on an offense level of six, Kaster's sentencing range would have been two to eight months. However, he might have been subject to a two-level enhancement under § 2F1.1(b)(2) for more than minimal planning, and a two-level enhancement under § 2F1.1(b)(3)(B) for violating a judicial or administrative order, injunction, decree or process. This would have resulted in an offense level of 11, and a sentencing range of 12 to 18 months
 
 
 [3]
 Section 152 defines nine distinct bankruptcy fraud offenses, including fraudulently making a false oath in a bankruptcy proceeding (i.e. committing perjury), § 152(2), fraudulently giving or receiving property for acting or forbearing to act in any Chapter 11 case (i.e. giving or receiving a bribe), § 152(6), fraudulently transferring property in contemplation of bankruptcy proceedings, § 152(7) (i.e.fraud). Subsection 3 makes it a crime to "knowingly and fraudulently make[] a false declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, in or in relation to any case under title 11."
 
 
 [4]
 Kaster also argues that the only case evaluating whether a sentencing court should have used § 2J1.3, rather than § 2F1.1, in a bankruptcy fraud case affirmed the district court's decision to sentence under § 2F1.1. See United States v. Beard, 913 F.2d 193 (5th Cir.1990). However, the Beard decision is irrelevant to the question presented here. Beard was decided before the Statutory Index was amended to include § 2J1.3 as an appropriate guideline for sentencing violators of § 152. U.S.S.G.App. C, am. 359 (effective Nov. 1, 1990). Because, at the time Beard was decided, § 2J1.3 was not listed in the Statutory Index, the question was whether the sentencing court could ignore the Index and use a non-listed guideline. The answer to that question is not pertinent to Kaster's appeal
 Moreover, in United States v. Castaneda-Gallardo, 951 F.2d 1451, 1452 (5th Cir.1992), the Fifth Circuit noted that Beard was decided before application note 13 was added to § 2F1.1. Application note 13 states: "Where the indictment or information setting forth the count of conviction ... establishes an offense more aptly covered by another guideline, apply that guideline." This court has held that application note 13 allows a sentencing court to consider guidelines not listed in the Statutory Index as long as § 2F1.1 is listed. See, e.g., United States v. Rubin, 999 F.2d 194, 196-97 (7th Cir.1993); United States v. Obiuwevbi, 962 F.2d 1236, 1242 (7th Cir.1992).
 
 
 [5]
 We could find no case on either the district or appellate level, reported or unreported, in which a court used § 2J1.3 to sentence a person convicted under § 152. The only case, aside from Beard, addressing the propriety of applying § 2J1.3 rather than 2F1.1, involved an unsworn statement that was not executed under penalty of perjury. United States v. Duranseau, 19 F.3d 1117, 1123 (6th Cir.1994) (conviction under 18 U.S.C. § 1001)