Affirmed by published opinion. Judge LUTTIG wrote the opinion, in which Judge WILLIAMS and Judge PAYNE joined.
 

 OPINION
 

 LUTTIG, Circuit Judge:
 

 Appellant Harold R. Walker pled guilty to one count of perjury under 18 U.S.C. §§ 2 and 1621, and one count of bankruptcy fraud under 18 U.S.C. § 152, and was sentenced to,
 
 inter alia,
 
 33 months imprisonment on the perjury charge and a consecutive five year
 
 *910
 
 term of imprisonment on the bankruptcy fraud charge. Walker appeals his sentence. Finding no merit in his arguments, we affirm the district court’s judgment.
 

 I.
 

 In 1978, Walker and his wife Carrie bought a farm in Free Union, Virginia, from Nettie Marie Jones. In 1983, Walker entered into a horse breeding venture with Jones, who was then a 92 year old widow. Walker and Jones each held 50 shares in the subsequently formed corporation, Example, Inc., although in actuality it was Jones who funded the venture by purchasing her shares for $50,000 and lending Walker $50,000 with which to purchase his shares. Jones also loaned the corporation $650,000, and also entered into a buy-sell agreement with Walker, who was 39 years old at the time, according to which the surviving shareholder could buy the deceased shareholder’s interest for $50,-000, regardless of the worth of the stock at the shareholder’s death.
 

 Walker subsequently persuaded Jones to make further loans to the corporation on two separate occasions, one in the amount of $345,000 and one in the amount of $500,000. Walker used these funds to purchase horses and other equipment that, although procured with corporate funds, were titled in the names of Harold and Carrie Walker. At some point after Jones made the $500,000 loan to the corporation, her nephew, an attorney, learned of Jones’ dealings with Walker, and intervened to restructure the corporation in order to protect Jones’ interests. In the restructuring, Jones transferred her corporate stock, and the corporation’s obligations, to Walker, and the Walkers guaranteed $1,000,000 of the corporation’s debt.
 

 Jones ultimately filed suit against the Walkers after they were unable to meet their obligations to her, prompting the Walkers to file for Chapter 11 bankruptcy on July 7, 1987, an action that was subsequently converted to a Chapter 7 bankruptcy action. On August 3, 1987, the Walkers filed, under penalty of perjury, a Statement of Financial Affairs for Debtor Engaged in Business. The Statement listed dozens of creditors holding secured claims of $1,592,651 and unsecured claims of $1,851,540, of which only $17,111 was ultimately distributed after liquidation. In this Statement, the Walkers, by their own subsequent admission, undervalued their personal property by over $245,000 and failed to list several bank accounts. Harold Walker ultimately pled guilty to one count of perjury in connection with the undervaluing of assets in this Statement of Financial Affairs.
 

 During the course of the bankruptcy proceeding, the trustee and creditors experienced repeated incidents of disappearing assets and problems getting the Walkers to produce records. At one point, Walker was held in contempt of court and given a 30-day suspended jail sentence for failing to produce records. On the basis of the Walkers’ numerous fraudulent acts committed during the bankruptcy proceeding, the trustee filed a complaint to deny the Walkers a discharge. The Walkers ultimately were denied a discharge, and the case was subsequently referred to the United States Attorney’s Office for criminal prosecution. After the Walkers were indicted by a federal grand jury, Harold Walker pled guilty to one count of perjury under 18 U.S.C. §§ 2 and 1621, and one count of bankruptcy fraud under 18 U.S.C. § 152.
 

 The Pre-Sentence Report (PSR) calculated a total offense level of 18, based upon a base offense level of 6, U.S.S.G.§ 2Fl.l(a), an eight level increase because the amount of loss exceeded $200,000,
 
 id.
 
 at § 2Fl.l(b)(l)(I), an additional two level increase because the offense involved more than minimal planning or a scheme to defraud more than one victim,
 
 id.
 
 at § 2Fl.l(b)(2), and another two level increase because the offense involved violation of a judicial or administrative order, injunction, or process,
 
 id.
 
 at § 2Fl.l(b)(3)(B). The PSR also recommended denying any departure for acceptance of responsibility, finding that Walker refused to accept the blame for his financial and legal problems, and had, since filing for bankruptcy, continued to engage in unethical, if not illegal, financial dealings. J.A. at 165.
 

 
 *911
 
 Walker filed numerous objections to the PSR, challenging,
 
 inter alia,
 
 its calculation of the amount of loss caused by his fraud and its recommendation that he not be awarded an acceptance of responsibility adjustment. At sentencing, Walker, through his counsel, pressed these objections, presenting oral argument and direct and cross-examination of live witnesses, and offering additional evidence into the record. The government also presented its response to Walker’s objections. At the close of the sentencing hearing, the district court expressly overruled Walker’s objections to the PSR, and sentenced Walker as recommended by the PSR (with the exception that it did not, as the PSR had recommended, grant an upward departure). Walker now appeals his sentence.
 

 II.
 

 Walker first contends that the district court violated Federal Rule of Criminal Procedure 32(e)(3)(D) by failing to address his objection to the PSR’s recommendation that he be denied an adjustment for acceptance of responsibility. We are not persuaded.
 

 Federal Rule of Criminal Procedure 32(c)(3)(D) provides that, if a defendant
 

 allege[s] any factual inaccuracy in the pre-sentence investigation report ... the court shall, as to each matter controverted, make (i)a finding as to the allegation, or (ii)a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing.
 

 The purpose of this rule is to ensure that a record is made as to how the district court ruled on any alleged inaccuracy in the PSR,
 
 see
 
 Fed.R.Crim.P.32(c)(3)(D) advisory committee notes, and thereby to allow effective appellate review of the sentence imposed.
 
 [1]
 
 To comply with this rule, “a sentencing court need not articulate a finding as to disputed factual allegations with minute specificity,”
 
 United States v. Perrera,
 
 842 F.2d 73, 76 (4th Cir.) (per curiam),
 
 cert. denied,
 
 488 U.S. 837, 109 S.Ct. 102, 102 L.Ed.2d 77 (1988), nor need it separately recite its finding as to each controverted matter.
 
 United States v. Morgan,
 
 942 F.2d 243, 245 (4th Cir.1991). It is, as this circuit and at least one other have held, adequate for purposes of Rule 32(c)(3)(D) for the sentencing court to adopt the findings contained in the PSR, provided the court makes clear which disputed issues were resolved by its adoption.
 
 Id.
 
 at 245-46;
 
 see, e.g., United States v. Rosales,
 
 917 F.2d 1220, 1222 (9th Cir.1990);
 
 but see, e.g., United States v. Price,
 
 945 F.2d 331, 333 (10th Cir.1991). Simply adopting the PSR’s findings
 
 in toto
 
 is sufficient “when the context of the ruling makes clear that the district court intended [by the adoption] to rule on each of the alleged factual inaccuracies.”
 
 Morgan,
 
 942 F.2d at 246. In such a context, an appellate court can discern the factual bases of the district court’s sentencing rulings— namely, the facts set forth in the PSR — and therefore is able to perform meaningful appellate review.
 
 Cf. United States v. Molen,
 
 9 F.3d 1084, 1086 (4th Cir.1993) (district court’s adoption of PSR with adequate findings permitted effective appellate review of restitution order),
 
 cert, denied,
 
 — U.S. -, 114 S.Ct. 1649, 128 L.Ed.2d 368 (1994);
 
 compare United States v. Chambers,
 
 985 F.2d 1263, 1269 & n. 3 (4th Cir.) (meaningful appellate review precluded where district court failed to indicate whether it relied upon contested factual findings outlined in PSR),
 
 cert, denied,
 
 — U.S.-, 114 S.Ct. 107, 126 L.Ed.2d 73 (1993).
 

 Here, Walker objected to,
 
 inter alia,
 
 the PSR’s findings associated with its recommendation that he be denied an acceptance of responsibility adjustment. The PSR stated two grounds for refusing Walker an adjustment for acceptance of responsibility. First, it noted that he had continued to blame the combination of other individuals and the downturn in the economy for his bankruptcy and subsequent legal problems. J.A. at 165. Second, the PSR reported that Walker had, since filing for bankruptcy, continued to en
 
 *912
 
 gage in “unethical, if not illegal” financial dealings,
 
 id.,
 
 citing a spate of judgments and lawsuits against Walker arising from his alleged failures to make good on debts,
 
 id.
 
 at 166-69. The PSR quoted a federal probation officer who had concluded that Walker had, since moving to Lancaster, Pennsylvania, some time after filing for bankruptcy, ‘“in very short -order ... “stuck” businesses or individuals for over $70,000.00.’ ”
 
 Id.
 
 at 169.
 

 Walker filed written objections to each of these findings contained in the PSR, contending that he had, in fact, accepted responsibility for his offense, that the judgments and lawsuits relied on by the PSR were unverified, and that the impressions of the quoted probation officer were irrelevant.
 

 Given Walker’s specific objections to the factual findings underlying the PSR’s recommendation that he be denied an adjustment for acceptance of responsibility, the district court was obliged under Rule 32(c)(3)(D) to make either “(i) a finding as to the allegation, or (ii) a determination that no such finding [wa]s necessary because the matter controverted [was] not [ ] taken into account in sentencing.” Fed.R.Crim.P.32(c)(3)(D). From the record before us, it is apparent that the district court satisfied this obligation by making an adequate “finding as to [Walker’s] allegations.”
 

 At the sentencing hearing, the court, after observing that it had received a comprehensive set of objections to the PSR from Walker, invited Walker’s counsel to articulate his objections to the PSR and to put on any evidence he wished. Although Walker’s counsel put on substantial argument and evidence regarding several other objections to the PSR, he declined specifically to raise Walker’s objections to the PSR’s acceptance of responsibility findings, stating that he had adequately addressed the issue in his written objections. After hearing argument and testimony as to several other contested sentencing matters, the district court stated from the bench that it “overrule[d] the objections filed by [Walker] to the [presentencing] report,” J.A. at 115, and sentenced Walker consistently with the PSR’s recommendations, with the exception that it did not grant an upward departure.
 

 Given the context, this statement from the bench satisfied the requirements of Rule 32(c)(3)(D). It is self-evident that, in expressly overruling Walker’s objections to the PSR, the court was in fact adopting the controverted PSR findings. Furthermore, the court’s statement that it overruled those objections that had been “filed by [Walker]” made clear, as the district court in
 
 Morgan
 
 failed to make clear,
 
 id.
 
 at 246 (unclear from the record whether district court intended its adoption of the PSR to include contested matter there at issue), that the court was adopting
 
 each
 
 of the PSR’s findings, including those underlying its acceptance of responsibility recommendation, to which Walker had filed an objection. Both of these conclusions are confirmed by the district court’s indication in its “Statement of Reasons” form accompanying its formal judgment — which itself probably provides a finding sufficient to satisfy Rule 32(e)(3)(D)(i),
 
 see
 
 Fed.R.Crim.P. 32(c)(3)(D) advisory committee notes (approving of practice of some courts of simply entering findings and determinations into a form which is appended to PSR);
 
 but see United States v. Roederer,
 
 11 F.3d 973, 981 (10th Cir.1993) (statement in defendant’s judgment that court adopted PSR’s factual findings does not satisfy Rule 32(c)(3)(D)) — that it “adopts the factual findings and guideline application in the presen-tence report except [the PSR’s recommendation for an upward departure].” J.A. at 158. Because it is clear to us that the district court adopted
 
 all
 
 of the controverted findings set forth in the PSR, it is necessarily the case that the district court resolved Walker’s specific objections to the PSR’s acceptance of responsibility findings by adopting those particular PSR findings, and thereby allowed for effective appellate review of its ruling.
 
 [2]
 

 See Morgan,
 
 942 F.2d at 246 (adoption of PSR
 
 *913
 
 findings adequate where clear that disputed issue was resolved by adoption);
 
 id.
 
 (district court’s adoption of PSR “in toto” adequate where “the context of the ruling makes clear that the district court intended to rule on each of the alleged factual inaccuracies.”). We therefore hold, under the authority of this circuit’s precedent in
 
 Morgan,
 
 that the district court complied with the requirements of Rule 32(c)(3)(D).
 

 III.
 

 Walker additionally charges that the district court erred in finding that the amount of loss caused by his fraudulent conduct exceeded $200,000 and accordingly increasing his offense level under U.S.S.G. § 2Fl.l(b)(l)(I) by eight levels. This claim lacks merit.
 
 [3]
 

 The FBI estimated that Walker’s fraud resulted in a loss of $205,893.89.
 
 [4]
 
 After a conference with FBI special agent John Zero, who had prepared this estimate, and Walker’s counsel, the probation officer concluded that the FBI’s estimate was, “if anything ... calculated conservatively to the benefit of Mr. Walker.” J.A. at 169-70. Walker challenged this calculation in his filed objections to the PSR, arguing that, in estimating the amount of assets Walker had tried to conceal, the government included a bank account that there is no evidence that Walker ever knew of or controlled and funds that were not a part of the bankruptcy estate, and valued personal property using an appraised value that was substantially higher than the price the property sold for at auetion. At the sentencing hearing, the court heard Agent Zero’s testimony as to how he calculated his estimate of the amount of loss and Walker’s objections to that estimate. The court rejected Walker’s objections, finding that the government’s calculation of an intended loss of $205,893.89 was in fact a conservative estimate, and that, in any event, Walker’s own admission that he undervalued his assets in his Statement of Financial Affairs by more than $245,000 constituted an independent basis for finding a loss in excess of $200,000.
 
 Id.
 
 at 115-16. The district court’s ruling was not erroneous.
 
 [5]
 

 Even if the government’s calculation of an intended loss of $205,893.89 were methodologically flawed, and we are not persuaded that it is, we agree with the district court that Walker’s own admission that, in filing his Statement of Financial Affairs during the course of the bankruptcy, he understated the value of his personal property by over $245,000, J.A. at 78,
 
 [6]
 
 itself establishes that the amount of loss in this case exceeds $200,000. Whether or not Walker attempted
 
 physically
 
 to conceal the property listed in the Statement of Financial Affairs, his substantial undervaluing of that property constitutes an attempt to conceal assets from the trustee or from an officer of the court that was perpetrated during the commission of the bankruptcy fraud for which he was convicted,
 
 see
 
 J.A. at 14, and therefore is relevant conduct that is properly considered in determining Walker’s guidelines range,
 
 see
 
 U.S.S.G. § lB1.3(a)(l)(A). Thus, the district court properly held, J.A. at 115, that Walk
 
 *914
 
 er’s undervaluing of his personal property itself — wholly independent from the government’s calculation of the amount of loss— conclusively establishes that the amount of loss exceeded $200,000.
 
 See
 
 U.S.S.G. § lB1.3(a)(3);
 
 id.,
 
 § 2F1.1, Application Note 7(a) (in fraud involving misrepresentation of the value of an item, amount of loss is the amount by which the item was overvalued). Increasing Walker’s base offense level by 8 levels under U.S.S.G. § 2Fl.l(b)(l)(I) was, therefore, appropriate.
 

 IV.
 

 For the above stated reasons, the judgment of the district court is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . The original purpose of the rule was to ensure that the Bureau of Prisons and the Parole Commission did not rely on inaccurate information from the PSR, Fed.R.Crim.P.32(c)(3)(D) advisory committee notes, but the rule also applies to ensure effective appellate review of sentencing under the Guidelines.
 
 United States v. Morgan,
 
 942 F.2d 243, 245 & n. 1 (4th Cir.1991).
 

 [2]
 

 . Because Walker only contests the adequacy of the court's record finding under Rule 32, not the actual merits of its finding that he was not entitled to a downward adjustment for acceptance of responsibility, we need not engage in substantive appellate review of the court’s finding that Walker had not accepted responsibility for his offense to an extent sufficient to earn a downward adjustment.
 

 [3]
 

 . Walker also argues that it was error for the district court to increase his offense level by two levels under U.S.S.G. § 2F1.1(b)(2) on the basis of its finding, as recommended in the PSR, that Walker’s offense involved more than minimal planning and that there was a scheme to defraud more than one person. We have considered this claim, and conclude that it is patently without merit.
 

 [4]
 

 . This figure represents the amount of loss Walker intended to cause hy concealing assets, not the amount of loss creditors actually suffered. J.A. at 100-02;
 
 see
 
 U.S.S.G. § 2F1.1, application note 7 ("if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss”). There is every reason to believe that, given the fact that the claims of Walker’s creditors totalled $3,444,191 while only $17,111 ultimately was distributed to two creditors after liquidation, the actual amount of loss creditors suffered as a consequence of Walker's fraud substantially exceeded $200,000.
 

 [5]
 

 . Because the amount of loss is, at least in this particular context, a mixed question of law and fact, we review the district court's amount of loss ruling under the flexible standard governing review of Guidelines issues that are neither purely factual nor purely legal.
 
 See, e.g., United States
 
 v.
 
 Stokley,
 
 881 F.2d 114, 116 (4th Cir.1989);
 
 United States v. Daughtrey,
 
 874 F.2d 213, 217-18 (4th Cir.1989).
 

 [6]
 

 . Walker not only admitted as much at the sentencing hearing, but actually pled guilty to perjury for undervaluing his personal property in the Statement of Financial Affairs. J.A. at 16.