**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

ORELUS ORRELIEN, a/k/a Jerome
Jean,
Defendant-Appellant.

No. 98-4766

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Fox, District Judge.
(CR-98-7-F)

Submitted: June 29, 1999

Decided: August 3, 1999

Before MURNAGHAN, ERVIN, and WILKINS,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Michael S. Petty, Sr., Raleigh, North Carolina, for Appellant. Janice
McKenzie Cole, United States Attorney, Anne M. Hayes, Michael G.
James, Assistant United States Attorneys, Raleigh, North Carolina,
for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Orelus Orrelien pled guilty to conspiracy to possess cocaine with intent to distribute, <u>see</u> 21 U.S.C. § 846 (1994) (Count One); possession of cocaine with intent to distribute, <u>see</u> 21 U.S.C. § 841(a) (1994), and aiding and abetting, <u>see</u> 18 U.S.C. § 2 (1994) (Count Four); distribution of cocaine, <u>see</u> 21 U.S.C. § 841, and aiding and abetting, <u>see</u> 18 U.S.C. § 2 (Count Five); and criminal forfeiture, <u>see</u> 21 U.S.C.A. § 853 (West Supp. 1999) (Count Six). Orrelien appeals his sentence of 292 months incarceration. He contends that the district court's determination that he was responsible for 150 kilograms of cocaine was based on unreliable hearsay. He also argues that the court clearly erred in finding that he was a leader in the offense. <u>See U.S. Sentencing Guidelines Manual</u> § 3B1.1(a) (1997). We affirm.

Orrelien was arrested in November 1997 after he participated in the sale of one kilogram of cocaine to an undercover agent in Dunn, North Carolina. Eleven kilograms of cocaine and twelve grams of crack were seized from Orrelien and the others arrested with him-- Ellus Larous, Arold Pascal, Mezilord Masselus (a/k/a Cogito Lariviere), and Macula Anty. Pascal disclosed that they obtained the cocaine in Miami, Florida, and brought it to North Carolina for distribution. Eight kilograms had already been sold elsewhere in North Carolina. However, Orrelien was held responsible for similar conduct involving cocaine and crack cocaine in the late 1980's and early 1990's based on statements made to a Drug Enforcement Administration (DEA) agent by Paul Colson and Fontele Groves, who were serving sentences for federal drug offenses. Both men reported engaging in drug trafficking with Orrelien during those years.

The probation officer attributed 138 kilograms of cocaine to Orrelien from Colson's statement and ten kilograms of cocaine plus 32.14 kilograms of crack from Groves' statement. The recommended base

2

offense level was 38. See USSG § 2D1.1 (150 kilograms of cocaine or 1.5 kilograms of crack). At the sentencing hearing, the DEA agent testified about his interviews with Colson and Groves. Orrelien argued that neither statement was reliable evidence. Without making a specific finding as to reliability, the district court found that the probation officer had correctly calculated the amount of cocaine for which Orrelien was responsible, but the court deducted ten kilograms of cocaine attributed to him from information in Groves' statement. Orrelien contends that the district court erred by considering the statements of Colson and Groves in determining the base offense level because both statements were unreliable and uncorroborated hearsay. He also argues that his right of confrontation was abridged because neither Colson nor Groves was present to be cross-examined.

When the amount of drugs seized does not reflect the scale of the offense, the district court "shall approximate the quantity of the controlled substance." USSG § 2D1.1, comment. (n.12). In resolving all disputed matters at sentencing, the district court may consider any relevant information, including hearsay, "provided that the information has sufficient indicia of reliability to support its probable accuracy." USSG § 6A1.3, p.s. and commentary; United States v. Love, 134 F.3d 595, 607 (4th Cir. 1998) (uncorroborated hearsay may be considered if defendant has opportunity to rebut or explain), cert. denied, ___ U.S.___, 66 U.S.L.W. 3790 (U.S. June 15, 1998) (No. 97-9085). Therefore, Orrelien's right of confrontation was not implicated by the introduction of hearsay evidence. Due process is satisfied when hearsay is introduced at sentencing if the evidence has "`some minimal indicia of reliability beyond mere allegation.'" United States v. Hicks, 948 F.2d 877, 883 (4th Cir. 1991) (citations omitted).

The district court did not explain its reasons for discounting the ten kilograms of cocaine from Groves' statement or say whether it found the 32.14 kilograms of crack in Groves' statement to be credible. Similarly, the district court did not expressly state its reasons for finding that Colson's statement was reliable; however, its ruling impliedly adopted the reasons argued by the government concerning that statement. We are thus able to "discern the factual bases" of the district court's ruling on the Colson statement by examining the government's argument. See United States v. Walker, 29 F.3d 908, 911 (4th Cir. 1994) (district court's adoption of presentence report's recom-

3

mended factual findings is adequate if context makes clear that all defendant's objections are thereby resolved). Because the record does not reveal why the district court ruled as it did on the Groves statement and because either statement was sufficient (if reliable) to establish a base offense level of 38, we will consider only the reliability of the Colson statement.

A number of factors put forth by the government supported the reliability of Colson's statement. First, Colson knew Orrelien's real name and the alias he used during his early years in Florida. Second, he knew the name of a Columbian source also known to Orrelien.* In addition, Colson's statement was generally consistent with the information the DEA agent received from another federal agent in Florida who was familiar with Orrelien. Last, Colson knew the names of Orrelien's associates. Therefore, we find that the district court did not err in considering Colson's statement as reliable hearsay.

Orrelien also argues that the district court's finding that he was responsible for 150 kilograms of cocaine did not take into account the five months Orrelien spent in prison in 1988 and 1989. He asserts that seventeen kilograms of cocaine should be deducted from the 138 kilograms of cocaine the probation officer estimated he obtained for distribution during this time. However, it is clear that Orrelien did not withdraw from the cocaine conspiracy while he was in prison. Therefore, his relevant conduct could include cocaine bought or sold by his co-conspirators while he was in prison. See USSG § 1B1.3(a)(1)(B) (relevant conduct includes reasonably foreseeable acts of others in furtherance of joint criminal activity). Moreover, the probation officer's estimate used the low estimate of two kilograms every three weeks, although Colson said Orrelien obtained between two and five kilograms every two to three weeks. Consequently, the district court did not clearly err in finding that Orrelien was responsible for at least 150 kilograms of cocaine.

Orrelien next contends that there was insufficient evidence that he had a leadership role in the offense and that the district court should

_____

*Colson said that "Juan" was Orrelien's source. When Orrelien testified at sentencing, he admitted that he knew a Columbian source named Juan, although he denied having any dealings with him.

4

have, at most, found that he was a supervisor or manager. <u>See</u> USSG § 3B1.1(b). The district court had before it reliable information that Orrelien obtained cocaine in large amounts from his sources in Florida and transported it to North Carolina where it was distributed and that he employed Colson to provide security for his stash of drugs, to collect money from lower-level distributors, and to pick up and deliver cocaine. Orrelien did not argue in the district court that a manager or supervisor role adjustment would be appropriate; he maintained that he was merely a one-time courier. Moreover, Orrelien's co-defendant Pascal described Orrelien and Ellus Larous as equal partners with each other and with the sources in Florida. There was no evidence of anyone from whom Orrelien took direction. On these facts, we cannot find that the district court clearly erred in determining that Orrelien was a leader in the offense. <u>See United States v. Reavis</u>, 48 F.3d 763, 768 (4th Cir. 1995) (standard of review).

We therefore affirm the sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

5