**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　　*Plaintiff-Appellee,*

v.

FREDERICK PLEDGE,
　　　　　　*Defendant-Appellant.*

No. 01-4624

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
James C. Turk, Senior District Judge.
(CR-00-30043)

Argued: October 31, 2002

Decided: December 3, 2002

Before WILKINSON, Chief Judge, and LUTTIG and
MOTZ, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Christopher Karl Kowalczuk, Roanoke, Virginia, for
Appellant. Thomas Ernest Booth, UNITED STATES DEPART-
MENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:**
John L. Brownlee, United States Attorney, Thomas J. Bondurant,
Assistant United States Attorney, UNITED STATES DEPART-
MENT OF JUSTICE, Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

## OPINION

PER CURIAM:

Frederick Pledge pled guilty to one count of racketeering in viola-
tion of the Hobbs Act, 18 U.S.C. § 1962(c). The district court found
that Pledge was subject to a sentence of ninety-seven months based
on the predicate racketeering offense of robbery. Pledge appeals this
specific factual finding, arguing that his offenses constituted only
extortion under color of official right, not robbery. We find this argu-
ment without merit and therefore affirm.

I.

Frederick Pledge, a former police officer in Roanoke City, Vir-
ginia, was indicted on August 16, 2000, for racketeering and conspir-
acy to distribute drugs. The indictment alleged that from 1994 until
July 2000, Pledge "exploit[ed] his position as a police officer to ille-
gally enrich himself." Specifically, it charged that Pledge "would take
money from drug dealers and users in return for which [he] would
forego arrest or warn drug dealers of pending charges." Additionally,
the indictment charged that Pledge used his position of power to force
known drug dealers to buy him meals, drinks, and haircuts, that
Pledge participated in drug trafficking by providing security for drug
deals and recruiting an individual to transport drugs to New York, and
that Pledge seized drugs from known drug dealers without reporting
the seizures to his superiors.

Count One of the indictment alleged that Pledge engaged in a pat-
tern of racketeering activity in knowing and intentional violation of
the law by participating in twenty-three separate racketeering acts in
violation of 18 U.S.C. § 1962(c). Nine of those racketeering acts were
alleged in the alternative; the indictment charged that the predicate
acts for these offenses were either extortion, robbery, or acceptance
of a bribe in violation of state law. Count Two of the indictment

alleged that Pledge participated in an unlawful conspiracy to possess and distribute cocaine, cocaine base, and marijuana in violation of 21 U.S.C. § 846.

On March 6, 2001, Pledge pled guilty to Count One of the indictment, admitting that he "committed in excess of two of the predicate acts listed in Count One." Pledge disagreed with some of the government's factual allegations, but he "fully acknowledge[d] that there [was] a factual basis for all the predicate acts in Count One." Pledge acknowledged that he entered the plea agreement knowingly, voluntarily, and with an understanding that "the matter of sentencing is within the sole discretion of the Court." Pursuant to the agreement, the government dismissed Count Two of the indictment.

On May 23, 2001, Pledge sent notice of his factual objections to Count One, denying the veracity of twenty-one of the racketeering acts. Pledge reiterated these objections in a memorandum of objections to the Pre-Sentence Investigation Report (PSR). Pledge specifically objected to the PSR's characterization of four of the racketeering acts as robbery.

The district court held a sentencing hearing on July 27, 2001, during which several of Pledge's victims testified. Victim Stephen Poindexter testified that in April or May of 1994, Pledge searched him and found $620 and a list of individuals who owed Poindexter money for drugs. Poindexter reported that Pledge pocketed the money and then told him to "get on out of here." In a second encounter, Poindexter alleged that Pledge searched his car and found about a kilogram of cocaine and half a kilogram of crack cocaine. Pledge took the drugs and told Poindexter to leave. During each of these encounters, Pledge was in uniform and wearing his sidearm.

Benjamin Rowland testified that Pledge took $1,000 and three quarters of an ounce of crack cocaine from him and his brother. Rowland testified that Pledge stopped their car, asked the brothers if they had any drugs, and then told them "it would be a lot easier" for them if they just handed the drugs over, which they did. Pledge was in uniform and wearing his weapon at the time.

Antonio Jervon Day testified that in October, 1997, Pledge searched him and found a quarter pound of marijuana. Pledge kept the

marijuana and told Day to go home. The following April, Pledge ordered Day into Pledge's police car, drove him to a secluded area, and then took an ounce of crack and $700 or $800 from him. Pledge was in uniform on each of these dates.

The PSR contained information as to a fourth victim, Damian Claytor, from whom Pledge allegedly took a sawed off shotgun, $6,000 and ten ounces of cocaine base.

Pledge testified in his own defense. He admitted to accepting numerous bribes in exchange for not arresting some individuals. However, he specifically denied all allegations of robbery by the individuals who testified.

Based on the PSR and the evidence presented at the hearing, the district court sentenced Pledge to ninety-seven months imprisonment, based on a total offense level of 30 under the sentencing guidelines. This offense level was predicated on the court's finding that some of the racketeering acts committed by Pledge, namely the acts committed against Poindexter, Claytor, Day, and the Rowland brothers, constituted robbery in violation of 18 U.S.C. § 1951. Pledge appeals this finding.

## II.

Pledge contends that the district court incorrectly sentenced him using the guidelines for the predicate act of robbery instead of the guidelines for the predicate act of extortion.

## A.

Pledge alleges that the district court failed to make certain required factual findings before sentencing him under the guidelines for robbery. Specifically, Pledge asserts that Federal Rule of Criminal Procedure 32(c)(1) requires the district court to "make findings as to the factual accuracy" of the PSR "when challenged by a defendant." Otherwise, the court must make a finding that the controverted matter will not be taken into account in sentencing. Fed. R. Crim. P. 32(c)(1). Pledge argues that since he raised specific objections to the

PSR's factual finding that he had committed robbery, the district court erred by failing to either make detailed independent findings as to that contention or explicitly adopt the findings of the PSR.

The purpose of Rule 32(c) "is to ensure that a record is made as to how the district court ruled on any alleged inaccuracy in the PSR." *United States v. Walker*, 29 F.3d 908, 911 (4th Cir. 1994). However, "a sentencing court need not articulate a finding as to disputed factual allegations with minute specificity," *Id.* (internal citation omitted). Moreover, it is sufficient for a district court to simply adopt the findings in the PSR, so long as the court indicates that it is adopting those findings to resolve the disputed factual issue. *Id.* "In such a context, an appellate court can discern the factual bases of the district court's sentencing rulings—namely, the facts set forth in the PSR." *Id.* Here, after hearing evidence from both sides relating to the finding of robbery in the PSR, the district court stated that it had "to find that this is robbery." This statement sufficiently establishes the court's rejection of Pledge's argument and acceptance of the factual contentions in the PSR. The bases for the district court's sentencing decision are clear from this record. Therefore, the court was not required to make additional factual findings.

B.

Pledge next argues that even if such factual findings had been appropriately made, the sentence was still imposed in error because his actions are not properly characterized as robbery.

Under the Hobbs Act, robbery is defined as "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession." 18 U.S.C. § 1951. Pledge argues that he could not have committed robbery because (1) he did not threaten any of his victims; (2) he did not use any physical force against his victims; and (3) none of his victims explicitly testified that they felt intimidated by Pledge or feared that he would harm them, either at the time or in the future.

Despite his contention to the contrary, Pledge's conduct fits the definition of robbery under 18 U.S.C. § 1951. Pledge unlawfully took

property from Poindextor, Day, Rowland, and Claytor while in the presence of each. Although he may not have directly threatened any of them, his speech, conduct, and actions during the encounters implied a threat of harm if they did not comply with his requests. To begin with, Pledge approached each victim armed, signaling to the offenders that they might be physically harmed if they did not meet his demands. Additionally, Pledge told Rowland that "it would be a lot easier" if he just handed the money and drugs over to Pledge, and he warned Day, after Day had denied that he had any drugs on him, "don't make me get out and check." Pledge specifically took Poindexter to a secluded area behind a store before demanding drugs and money from him. This request indicated to Poindexter that whatever happened to him if he refused Pledge would be out of the sight of anyone who might otherwise come to his aid. These actions are sufficient to meet the statutory requirement of "actual threat, force or violence or fear of injury immediate or future." *Cf. United States v. Woodrup*, 86 F.3d 359 (4th Cir. 1996) (intimidation may exist when a reasonable person could infer a threat of harm, even if the defendant did not make an explicit threat).

Moreover, even if Pledge's conduct could also constitute extortion, it is in the discretion of the government to choose which charges to pursue. *See United States v. Batchelder*, 442 U.S. 114 (1979). "[W]hen an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants." *Id.* at 123-24. Here, Pledge's actions could properly be characterized as robbery, therefore it is irrelevant that they might have also violated another statute. The government chose to pursue a sentence under the robbery guidelines, and the judge did not err in imposing such a sentence.

III.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*